Illinoi Environmental v. Ill. Environmental Protection Agency 5-13-0244 Thank you, Your Honor. May it please the Court. Good morning, Your Honor. My name is Gene Schmitkins and I'm here today representing the plaintiff appellant in the case Illini Environmental Inc. Illini respectfully asks this Court to reverse the circuit court decision by Judge Aguirre below for the following reasons. First, the trial court erred in finding that Race 2, Your Honor, did not apply to a prior decision by Judge Cason in the Illinoi Environmental Protection Agency's enforcement action or in the alternative that the defendant was not obligated to follow the strict mandates of Section 31 of the Illinoi Environmental Protection Act. Second, the trial court erred in finding that the landowner improperly manufactured waste from the Substance Abuse Facility directly to the southern Illinois landfill. And finally, the trial court erred in finding that the defendant may post incomplete and misleading information on its website. Your Honor, this is a case simply about the defendant putting all their eggs into the enforcement basket, which was heard by Judge Cason, and then left that basket in Judge Cason's courtroom when it failed to address the facts submitted by Illini in support of its motion for summary judgment. This leads me to my first point with respect to SG Solutions' transaction, which was the subject of the defendant's enforcement action. Now, before beginning my argument, I think it's really important that we understand what exactly the defendant sought in their enforcement action. It sought first a decision that there was a violation. It sought second that there was a prospective injunction against any future violations, and it sought a civil penalty. The enforcement action did not make any allegation that there was any contamination, no allegation of any ongoing violations, no allegation of any harm to human health. In essence, everything related to the SG transaction was completed when Illini installed their computer program in order to cross-reference waste. So the matter really comes down to the defendant just wanting a civil penalty. Now, the defendant talks a lot in their brief about the alleged terrible things Illini did in this matter, but they never tell you the manifest was prepared in accordance with the type of waste that SG said they had. The record clearly reflects that SG said they had flammable waste, they had fluorescent light, which is a special waste, and they had citric acid and soda ash, no reference to it being hazardous. I was somewhat confused by the fact that the certificates were switched. Yes, Your Honor. What happened was SG called in and said we have these wastes. Illini, as a convenience to their customers, prepared manifest based upon what waste the customer said they had. The driver took those together with the appropriate markings for any drums in order to comply with transportation regulations. Well, see, I've got a question, excuse me, Johnson. I thought they were replacarded as non-hazardous. Originally, they were placarded as hazardous. Well, they were originally placarded as hazardous, but again, the manifest is what controls everything. Well, how did it happen that they were recertified or reclassified? Well, an SG Solutions representative signed the manifest, which certified that this waste was non-hazardous. Yeah, but how did it come to be that it was now a non-hazardous material? It was based upon the phone call, which Illini received from SG, which did not indicate the soda ash and the citric acid was hazardous. I thought that was chrome. Well, chrome, and that's where we get into some problems with respect to the evidence. Illini sampled some residue they had, and it came back non-detective. There was no hazardous waste at all in that. The way the system works, if I may, and this gets a little bit outside of the record, and I apologize for that, but a generator of waste is supposed to test that waste to determine whether it's hazardous or not. They basically do these waste profiles. So that waste could be sampled months in advance of a particular waste. It's also not uncommon that waste such as citric acid, which is a byproduct of something, some of it may be hazardous, some of it may be not. So then SG, when they labeled it, they had sampled it? Not this waste. At some point prior to that. There's no evidence that they sampled this waste. But it was labeled? It was labeled hazardous, yes, ma'am. And you're saying that was on what basis? You don't know? I don't know. They did their sampling for the purposes of complying with the law and having a waste profile. Okay. So their sampling showed it was hazardous, and you're saying that was changed because of a telephone conversation? It was changed. Well, it was changed for a couple of reasons. The telephone conversation said we have this waste. The manifest for which they certified that it was not hazardous. But they didn't prepare the manifest, did they? That's correct, Your Honor. That was the line item. But the regulations specifically say it's the generator that's responsible for what's on that manifest. And they're the ones that have to, and the record sets forth the certification that they say. And the generator is SG, is what they say. It's SG, that's correct. But then don't you also say that Illini's the generator? Not in this matter. That's in the other matter. That's in the other matter. Okay. Yes. So procedurally, the way we got here is Illini filed this motion to dismiss under both 2619A3, which is a prior pending matter, and 2619A9, that the claim asserted is defeated by some other affirmative matter. Illini fully briefed the issues, provided affidavits and other documents to Judge Kaysen, and supported the 619A9 section. The state did nothing. They did not provide any evidence, even though that once the burden shifts to them, it's their responsibility to go further with further evidence. Instead, the state relied solely on the issue of whether or not the Attorney General could file an action, irrespective of what IEPA may have done in the Section 31 enforcement. Judge Kaysen first took Illini's motion to dismiss under advisement, but later, called for a hearing on the motion to dismiss. Her order did not limit the issues to 619A3, and the order also requested that the parties let her know if the date that she had chosen was inconvenient. Illini appeared at the hearing. The defendant did not appear. At this point, after waiting a period of time, Judge Kaysen entered her order, which said, the court being fully advised of the premises, determined the defendant's motion to dismiss is well-founded. Said motion to dismiss is granted. Now, as your honors are aware, Supreme Court Rule 273 says that unless the order of dismissal or a statute of this state otherwise specifies, an involuntary dismissal for an action, other than three exceptions, is an adjudication upon the merits. Now, the defendant asked his court to ignore the plain meaning of Rule 273, which says it's an involuntary dismissal, and which is the last issue that we need to show race judicata apply. We have this privity of issues. We have privity of the parties. So the only issue is, did Judge Kaysen's order dispose of the matter? Now, Judge Aguirre found— Does it matter that it wasn't with prejudice? It does not matter. The cases all say that those are cited throughout the record, and I think in particular I refer you to the Kiefer v. Rust-Oleum case, which is cited by both parties before Judge Aguirre. It doesn't matter. You don't have to use the term of art with prejudice or without prejudice. Now, Judge Aguirre found that the order was not final, but he gave no reasons. He had no analysis in his order, didn't indicate whether he looked at the totality of the issues, but he also said that Illini couldn't raise race judicata anyway because Illini wasn't the defendant in both cases. Now, of course, that's a brand-new requirement, which is nowhere established under the law. The law only says you have to have the same parties. You don't have to be the defendant in both cases or the plaintiff in both cases. So the finding that the order by Judge Kaysen is not final is an error. When you consider the case law, which directs a court to review in the entire context which the order was entered, including looking at the pleadings, including looking at the motion to dismiss, defendant ignores the fact that it did not appear before Judge Kaysen when they were ordered. Defendant also has this court to ignore the fact that it never provided any evidence to counter the affidavits and other evidence which Illini provided Judge Kaysen. It ignores the case law, which requires it to provide counter evidence, want that evidence put forth by Illini. If the ruling was on the basis that there was another, the 2619E3, that there was another suit pending, is that a final adjudication? That would not, Your Honor. And we don't know whether or not that, in fact, was. Which is why I think, which is why the law says the courts have to look at the whole, put everything into context. What was pled? What did the motion say? What evidence was presented? And in this case, all the evidence was presented by Illini. There was nothing counter put in by the state. And they're the one, they didn't even show up for the last hearing. They're the ones that filed the enforcement action even though they did. In fact, the defendant had the opportunity under Section 2608D to file a cross-claim in the prior pending matter, or they had the opportunity to move to join both actions, where it would have been heard by one judge, where everything could have been heard. They're the ones that chose to file the second action. They're the ones that didn't provide any of the evidence. They are now bound by the decision by Judge Kaysen. Because when you look at everything in its context, when you look at the fact that Illini filed the motion based on both provisions, and asked the judge to consider all of the issues, and all of the cases, and all the evidence, and all the pleadings, it's clear that in putting that context under the rulings of the case law in this state, that that was a final adjudication. So what the defendant did is they ignored the enforcement action, and they now argue, despite the specific directive for Rule 273 and the totality of all the pleadings, that it should get a second bite of the apple to re-argue the case it should have argued before Judge Kaysen. It asked this court to completely ignore everything else, and limit its review to the one ground raised in the motion dismissed that says it was a prior pending matter. But this is exactly what race judicata is designed to avoid. So let's talk about race judicata. First, it's clear that the dismissal by Judge Kaysen did not involve any of the three exceptions. She had jurisdiction, there wasn't a necessary party, and Vayner was proper. All the other requirements of race judicata are present. The same parties, the same issues, and because there was uncontested evidence, which defeated under 619A9, it was a final adjudication. The rule says it, the order says it, and of course when we look at the order by Judge Kaysen, where she talks about the plural premises, and when she says the motion to dismiss is well-founded, and the motion to dismiss is granted, we've got to look that it encompassed everything that was before her. The bulk of the defendant's brief is spent arguing the sufficiency of the evidence in the pleadings considered by Judge Kaysen. The problem is they're just too late. And this is what race judicata is designed to avoid, relitigate. I have a question. Yes, Your Honor. In Judge Aguirre's order, and maybe I'm confused, he says that race judicata doesn't apply because Illini Environmental, Inc. is not the defendant in this matter and has no cause to affirmatively raise the issue preclusion. And it's sued. I don't understand that. I think what he's referring to is that he believes that Illini has to be the defendant in, was the defendant in the enforcement action, and was their motion to dismiss was granted. I believe he believes that Illini also had to be a defendant in its declaratory judgment action. So the only way you can raise race judicata is if you're the defendant. You have to be the same when you say that – you think that when he says the same parties, you mean he means the same positioning of the parties? I believe he's talking about alignment of the parties, yes, Your Honor. Because Illini Environmental, Inc. was in both. That's correct, Your Honor. Okay, that's why I was confused about his order. We don't believe that – we believe that your reading is exactly correct, that he said that you have to be the defendant in both matters. Well, that's not what he says, but he says the defendant in this matter, and I'm like, okay. I think what he's saying is you have to be the defendant in both matters. That race judicata is just privity, I mean, same parties. Yes, Your Honor. Okay, thank you. Now, we believe that this should dispose of the SG solutions transaction, but in the event this court would find the decision by Judge Kasin was not final, then our alternative argument is that the SG solutions transaction was resolved under the strict mandates of Section 31 because the defendant failed to follow the rules that's required to follow to enforce the act. Defendant's brief chooses to ignore and thus must concede that the act is in derogation of the common law, and it must be strictly followed. There's no dispute that Illini took all the steps it was supposed to under Section 31. The problem is that the defendant didn't. When it allegedly notified Illini on December 8, 2010 that it was rejecting the compliance commitment agreement that Illini had proposed, and in that agreement Illini agreed that they would buy this very expensive computer program so that irrespective of what they heard from a customer when they called about the waste, it would be cross-checked to ensure that it would be an extra step to make sure that the manifests all match. But what the State's December 8, 2010 letter said, it was rejecting the compliance commitment agreement of SG solutions. Now, the defendant will tell you that Illini should have asked the defendant if they meant to send the letter. However, there's nothing in the law, there's nothing in the regulations that requires Illini to say, hey, did you mean to reject, send us a letter about SG, or did you mean ours? There's no requirement for that. Now, it's true that Illini said nothing about the December 6 letter because Illini wasn't concerned with SG because it had already completed the compliance commitment agreement. It had already installed the computer program and was already using it. So that was a mistake that the SG designation should have been Illini? I don't know, Your Honor. Section 31 says that the Illinois Environmental Protection Agency, the last step is that after you have all these meetings and you propose the compliance commitment agreement, it says it has to advise the party whether or not that is rejected or accepted. And in this case, they rejected SG solutions. And their argument is it was clearly a typographical error. You should have known or you should have asked us whether it was right. But the problem is, is that Illini didn't know until they got the letter that they were going to be sued. And at that point, they did write the State. But they did get the letter rejecting SG. SG, yes. And they just threw it in the trash because they thought it was supposed to go to SG. Well, I mean from Illini's standpoint, they said we're going to buy this $20,000 computer program, we're going to implement it, and we're going to do it. And we don't hear that no, that's not good enough. I think under the law, that's okay. The burden is on the State. The burden is on the defendant to say what they mean in those letters. And there's a recent Supreme Court decision that just came down dealing with child support. And the mother issued a garnishment against the father's employer and didn't include the Social Security number. And the Supreme Court said even though this was child support and the employer never withheld any money, the court said you've got to strictly follow the statute. I mean, these cases are cited in our brief. When you have a statute and derogation of the common law, it's incumbent upon the enforcing party to make sure that they follow all those steps. But when we received that letter, Illini let the defendant know there must have been an error. Illini hadn't fully complied with the CCA, and the only letter it ever received was that SG's solutions CCA was rejected. The record discloses no attempt by the defendant to fix the alleged typographical error. That defendant said Illini should have known by some reason that it was actually there. Didn't send a new letter, didn't respond to Illini's statements. Hey, he obviously made a mistake. They were just silent as if the problem did not exist. Now, the defendant has submitted a supplemental authority to the court to consider here. And in that case, people versus Ionder, if I pronounce that correctly, the court was trying to determine whether or not it had jurisdiction to hear that. And it held that the statute, the legislature, cannot withhold jurisdiction under this. But it did specifically say that under Section 31, where these defendants failed to get notice that they were being sued, the appellate court held that that would be an affirmative defense. So, again, there's nothing in that case which would indicate that there's any exception to the Environmental Protection, the Illinois Environmental Protection Agency, from following the strict construction of the law. So, in short, SG didn't follow the rules, and the SG, or the IEPA did not follow the rules, and the SG solution in our alternative argument was also resolved because Illini did everything they were supposed to do. With respect to the second issue, and I see I'm running out of time, defendant will tell you the manifest was false because the waste was not traceable, though the record clearly reflects that they were very easily ready and able to find out the origin of the waste, and that Illini cannot be a generator. Now, let me clarify something that I think the defendant might imply in their brief, and that's something Illini did in this case was because of the people going to the hospital after there was this reaction at the landfill. That wasn't the case. The waste was the waste. There was something that happened down there that caused the reaction. There was nothing that Illini did that caused this situation. I thought it was a reaction with the waste that Illini was putting in the landfill. Illini was carrying the waste. Yes, that's correct. But the issue here is whether or not the manifest was correct. You'll have rebuttal time, sir. I'm sorry? I said you will have rebuttal time, sir. I can address that if necessary at that time. Thank you, Your Honor. Gonsal. Good morning, Your Honor. Good morning. May it please the Court, I'm Christopher Turner, the Assistant Attorney General here on behalf of the defendant, I believe, the Illinois Environmental Protection Agency. We're asking the Court to affirm the circuit court's order that denied Illini Environmental's motion for summary judgment and further upheld that Illini is not entitled to any declaratory relief that it seeks in this petition. Now, I'll start off with referring to the SG solutions matter that was count one in the declaratory judgment action. It's actually notice L-2010-1282. But if I refer to it, it will be notice 1282. With regard to that matter, first of all, there was the threshold issue of res judicata. The Court properly found the dismissal, the prior dismissal of the Attorney General's enforcement action for notice 1282 doesn't bar the EPA in this action from defending this deck action as res judicata. That's because the line, I failed to carry its burden to show that the dismissal of that action is a formal adjudication of merits. How would they show that? They, well, under the Supreme Court precedent, Hernandez v. Pritikin, they I'm sorry, you're talking too fast. I'm sorry, I'll slow down. Under the prior Supreme Court authority, Hernandez v. Pritikin, let me say, they, as a proponent of res judicata, have the duty in order to obtain a clear record to show that from the prior proceedings, the res judicata applies. And actually, that even particularly has to do with the final adjudication when the issue of whether or not the prior order was a final adjudication of merits, they have to get a definitive ruling that clearly demonstrates their entitlement. So what that means here is in the prior proceeding, they needed, certainly at the very least, to get a dismissal with prejudice. But more importantly, because they saw as their primary relief dismissal under 619A3 for the pendency of this death caption, they were required to get, if they wanted to get uses as res judicata, they needed a clear order saying that it was being granted on the other 619A9, the substantive grounds, something reflecting the court was reaching the substantive merits. So since their pleading was in the alternative, the order had to say which one it was being referred to. Correct, Your Honor. You would have to say both. Because as it was stated in second of judgments, section 20, the common eye explains, when you have an order that grants a motion under 6, well, due to a pendency of another action, here that would be 619A3, it is plainly contemplating that it's not reaching the merits of the case and that the other action should be allowed to go forward. So once that was on the table, if they really wanted to use that case as res judicata, they needed an order clearly stating no, this is not a dismissal under 619A3, it's a dismissal under 619A9. But that's not what Judge Aguirre said. I mean, your argument is different than Judge Aguirre's order. Correct, Your Honor, it is. I mean, do you agree with Judge Aguirre that you have to be the defendant in both actions in order to invoke res judicata? No, we haven't supported that argument here, Your Honor. I mean, I would say that it's clear you can always use offensive res judicata, either collateral estoppel or res judicata offensively. Actually, there is a complicated law in that law when you can use it as a plaintiff. But we haven't made that argument here. Okay, so you're saying that the judge was right, but his reason was wrong, and your reason is the reason res judicata should not apply. Correct, Your Honor. The law, the authority is clear that this court can affirm that judgment on any basis that's supported by the law. I understand. I just wanted to make sure I knew your position. Okay, thank you. And, indeed, the restatement second of judgments further explains in Section 20 in Common E that when you have alternative bases, even if the court, which didn't happen here, would clearly provide alternative bases that it was granting a motion to dismiss, and one of those bases would be one that would not reach the final adjudication on the merits, that that order still should not count as final for purposes of asserting res judicata. We cited some cases which support the same principle. One in Illinois, the Lehman case, and then there was a Seventh Circuit case also which followed the same principle. Now, Illini also, with respect to Notice 1282, seeks to avoid enforcement by arguing that the EPA should be deemed to have accepted their proposed compliance commitment agreement. However, as the circuit court properly found, the EPA did reject the Illini's proposed, I'll refer to it as a CCA, which I don't think is a bit of a mouthful, the proposed agreement in their written letter, I believe it was December 6th. Sent to the wrong, you're saying this is a prior letter to the one that was sent to SG? No, this is the letter that was sent to Illini's counsel who had been the representative. Okay, that's what I thought. And what it had was a mistake. It did have a misnomer that when in the body of it explains rejecting the CCA, it said they rejected the November 30th CCA proposed by SG Solutions. However, as the circuit court found, the substance and intent of the letter were clear. It wasn't only directed to Illini's counsel. It said what it was regarding. It was regarding Illini. It was regarding Illini's Caseyville facility. That's where their violations occurred, not just SG Solutions. It gave the code for their place. It also was referring to the notice 1282, not the notice that was a separate notice, which was sent to SG Solutions involving other provisions that they had violated. You're saying there was basically no way that it could have been a confusion on the part of the reader, that it did not pertain to them and the notice? We don't think there was any way they could have been confused. It even referred to the date that they had proposed it, it was November 30th. However, to the extent there would be any confusion, they could have inquired, and under the statute, we think they were required to. They keep referring to the EPA in Section 31 as a derogation of the common law or a penal statute. They cite to nothing in support of that. There is no authority looking at the Environmental Protection Act as either a penal statute or as a derogation of the common law. It is a remedial statute. Section 2 from the General Assembly directs that it should be liberally construed to effectuate its purposes. The Supreme Court and appellate courts actually have each repeatedly repeated this and applied that principle. We cite a couple of them, the Town and Country Utilities case, the Granite City case. Those are the two of the Supreme Court cases that apply the principle. But it is not a penal statute. It has not been interpreted narrowly, and particularly the Section 31. 31 doesn't report to provide the authority for the Attorney General to pursue an action. It creates a procedural mechanism. It's a procedural mechanism in which for the alleged violator to negotiate, an opportunity to negotiate and settle a possible violation with the EPA. The reason why we put forward that other case, J.T. Imador, is to further look at the procedures under Section 31 and finding it not to be a jurisdictional bar, failure to meet it to be a jurisdictional bar. It also explains it's not mandatory. It's a directory statute. Now here, in addition to the fact that the EPA complied with it, the Circuit Court also probably found that even if it had not, there's nothing in Section 31 that states that the Attorney General on her own motion could not subsequently pursue an enforcement action for a violation. And to the contrary, the subsection 87.6 acknowledges that this Attorney General can always pursue her own action, enforcement action on her own motion for a violation, regardless of whether the EPA prefers it. Or 7.6 is looking at the exact circumstances where you have an alleged violator with an accepted CCA who has successfully completed it, and all it does is direct the Attorney General to consider that fact before filing a complaint on her own motion. Reaching to the merits of Notice 1282, this was with the SG Solutions. And here, just clarifying the facts that we have presented, that it was labeled and identified by SG Solutions to the world, but also specifically to Illini as hazardous. And even if you look at the affidavit they put forward at, I believe, page C309 of the record, by their employee, Nikki Johnson, in paragraph 6, she states, you know, she is the one who took the call from SG Solutions. They told me they had hazardous waste to pick up in the form of flammables, lead batteries, citric acid, and soda ash. She goes on, apparently, to explain that she was, you know, she interpreted that to mean that it didn't apply to the citric acid and soda ash. But she says herself, that's what they told her. We have hazardous waste in the form of these very, of this long list of things. Given that information, certainly, at that point, Illini was on notice that this was hazardous waste. Now, we provide, it's important to go back to the relief they seek in their petition, Act 1. It's a declaration that they're not a generator, that they didn't violate any regulations because they're not a generator under the statute and therefore have no duty to certify, or to certify whether or not it was hazardous waste. They were a generator, they were plainly a generator under the Act. They became one when they brought that waste back to their facility, opened it up, and then mixed it, processed it with other wastes, solidified it, and then shipped it off for disposal somewhere else. That under section, I don't have the section right in front of me, but we do cite it in our brief. It's a plain statute, but if you make any act or process that creates new waste and you mix something with other waste, that's new waste. This isn't a novel or controversial application of the statute. So, to the extent they cite a declaration, they clearly are not entitled to it. And that basis alone, of course, should affirm the denial of the judgment against them on Act 1. However, also, they were, even if they weren't a generator, most of the regulations that they were cited for predominantly applied to generators. It also applies to anyone who's bringing it back to their, either bringing the waste back to the facility, accepting and receiving it at the facility, or shipping it off then for disposal. And there it was hazardous waste. They didn't have the permits to handle that service, that hazardous waste, and therefore were in violation of those provisions. They also raised issues about that they had tested it, that they claimed they had tested it and found that it was not hazardous. They did seek a declaration for that, so that really didn't go to the belief they sought with regard to Count 1. But regardless, the evidence they put forward doesn't show that testing met any of the regulatory requirements, would be for the methods they're supposed to use to determine whether or not waste is hazardous. They claim, at least in the briefs, in a reply, that, hey, it's soda ash, it's citric acid, why should we think that's hazardous? Therefore, they're not relying on subdivisions. They can rely on their knowledge of the waste, the characteristics of the waste. However, first of all, we are now in this age where we know, and certainly we expect transporters who handle waste to understand, you could have sand or citric acid or soda ash that can be contaminated. As SG's testing here shows in the record, it was contaminated with hazardous levels of chromium and arsenic, one of them had chromium, one had arsenic. But regardless, they have the knowledge. That is, they have the knowledge that SG Solutions had not previously identified this as hazardous waste. And because of that, they had a duty to really test it, to figure, to really determine why that was labeled previously as hazardous waste. And it would be, somebody, that would mean somebody would probably test it under the method, U.S. EPA method 1311, using the TCLP. They also refer to testing they took after the fact of their processed material that was shipped off to the landfill. But they didn't really test that material. They test the container, residue from the container a week later. They don't try to afford any facts or anything showing that that would comply with any regulations. It wouldn't show that it's not hazardous, and certainly wouldn't comply with any of their requirements of what they did with the waste that came from SG Solutions originally, or even tell you whether or not SG Solutions was necessarily, the waste they obtained from SG Solutions was necessarily hazardous. If I go on to the next notice, I'll call it for short Notice 1008, and that is the declaratory judgment action in Count 2. And regarding the special waste that was picked up from tributes, from their customer tributes, a Missouri customer out of state, and brought into the Illinois landfill, there was subsequently a reaction that happened there. Now, to clarify the record, counsel for Illini is correct that this case is just about the manifest. It's not about who caused that incident over at the landfill. Not surprisingly, Illini does have a position that there's no evidence in this record about it. And understandably, because that's not the issue here, but right now that is the subject of the EPA investigation, what caused it. And this is just a threshold issue for the Illinois EPA in resolving that investigation. The first thing we found was that their manifest misidentifies, falsely identifies Illini as the generator of that waste. So that was part of the investigation in general of what happened at the landfill. That's how it was uncovered? Correct. Okay. So after the incident, and starting to investigate, it was a threshold issue. Immediately they understood that, oh, wait, this manifest is wrong. So correct it due to a falsehood. And that's what the real, that's the only real, that's the only issue that's in this deck action. And in Notice 1008. But that's the important, that they claim to have violated, they've never provided any argument why they would be considered a generator under that, under the regulations or the statute with regard to that special waste. They just picked it up and brought it straight to the landfill. They just want to, basically our argument appears to be that it's just not important. That we, that no, there's no injury resulted, although, again, we don't, there's no reason we wouldn't have to prove injury at this point. The fact is they violated the statute, I'm sorry, the regulation. That Demohan statutes have identified them as the regulator. It's important, very important to us, EPA, because we use these manifests in order to trace the waste stream. Particularly when we have an incident like this occurs. It's important to the landfill to prevent an incident like this occurring. Because when you get the waste from the generator, as we cite in our brief, you're going to get a waste profile which depends, is linked to that generator. These are all issues that are very important to us. There is a violation. Whether or not there ends up being an injury, whether or not the line ends up having some fault or no fault involved, that could all be relevant to a penalty that the court might impose for our enforcement action. But it certainly isn't relevant to whether or not they violated the statute. I'm sorry, under the regulation. With regard to count three, they see, actually the declaration they saw wasn't in the petition. The intention is not to change the information that we posted on our website. It was just that we couldn't post it on the website. They now also argue that we should provide extra information. Basically, the EPA just posts the basic information, the fact of the notice of violation that's been issued after it's been issued. Is this issue moot, really? Yeah, it is, Your Honor. Because their argument based on before was that we had jumped the gun. While we disagree with that. Now you have your proceedings going on, and so it seemed to me when I was reading that this is a moot issue. It is, Your Honor. Because at this point, it's already happened. And to the extent they say that we need to put other information about their position on our website, they cite no authority in the statute or regulations. Has the information been updated, though? I mean, I looked at the website. It's got quite a few violations. There's a number of violations, and there's other matters which are on there, too. I didn't consider those. I just wanted to see if it was moot or not. It's on there. I don't think it's been updated in the sense that since nothing's happened to put it on there. I mean, what happens is the EPA, in my understanding, is they will take it down when it's been resolved. Right. But it hasn't been. Obviously, this case is ongoing. Unless the court has any more questions for me. Thank you, counsel. Thank you. Rebuttal. Thank you, Your Honor. A few items. The Hernandez case that the defendant relies so heavily is easily distinguishable from here. In that case, there was a denial of motion to dismiss. There was another order of leave to refile. Defendants participated throughout the litigation. They filed one or two other things. Here, we have a motion to dismiss that was granted. We have Supreme Court Rule 273, which directly addresses. So, Hernandez is not there. What about this argument that you had in your 619 motion alternative? Well, it was not argued in the alternative, Your Honor. It was argued for both of these reasons. The pleadings, if you review the pleadings, make it clear that we're saying they're not entitled to it for this reason and they're not entitled to it for that reason. So, you don't think the order had to be more specific? No, Your Honor, it doesn't. If you look at the Kiefer case, which says that the courts, the magic language, and that has been briefed throughout, without prejudice or with prejudice, doesn't have to be there. But the courts are directed to consider the entirety, to look at the pleadings, to look at what the court decided. What if it's not clear? Well, I think it's very clear. We're talking about premises. We're talking about pluralities. We're talking about, I know that you gave us alternative arguments. I know that you gave us facts. I know that you gave us affidavits. That was uncontested. This isn't a situation like Hernandez where people went in and there was litigation going back and forth and there was other evidence presented and all that kind of stuff. In this case, there wasn't any evidence. The state slept. So, it wasn't in the alternative. Secondly, with respect to whether or not, the second point, whether or not it's a penal statute, it clearly is. Under the common law, which was the only way prior to the Environmental Protection Act, was the only way to enforce any alleged violations of any hazardous waste. Under the common law, you could only get injunctions and that type of thing. This created a system that imposed civil penalties, so it's clearly a penal statute in derogation of the common law. The state also cites that the Attorney General, the only, I feel you're painting me wrong. Sorry. I just heard the stand up, though. Cites the fact that under the Environmental Protection Act, the Compliance and Commitment Agreement is just one factor to be considered by the Attorney General. However, that was an amendment that took place in 2012. The prior law under which we were operating, before the amendments to the Act, didn't contain this provision. So, under Section 31, the case ended as soon as that Compliance and Commitment Agreement was accepted. Let's talk about the manifest system. We spend a lot of time talking about the fact that the line I handled, this hazardous waste and all that kind of thing, and whether or not Nakia Johnson understood correctly what the waste was and all that kind of stuff. It's irrelevant. The manifest system is not something germane only to Illinois. It's national. It's a system that's been put in place to track hazardous waste, and it's incumbent on the generator to say and certify what's there. But can't it be that they're both complicit in this? It's possible. That's what it sure appears if the intake person, whatever her name, Kanita, if she says, yeah, they told me it was hazardous, and it's labeled hazardous, and then Illini prepares a non-hazardous manifesto, and then they sign it as non-hazardous. I mean, it sure appears to be some kind of complicit action. Well, first of all, if you read the whole affidavit, you'll also find out that this was not a regularly hazard-handled waste. It was something that was handled very sporadically. But under our manifest system, what the defendant's proposing is that at every step, if a new transporter gets it, they have to sample it to make sure that that manifest is correct, and they're absolutely correct that Illini is entitled to rely on their knowledge. One of the ways they get the knowledge is what's in the manifest, and the manifest said that waste was non-hazardous. All these alleged violations arising out of SG, all are what happened after the fact, after the waste came here, but the bottom line is Illini handled it in accordance with their weight, with their permit, and Illini was entitled to, under the regulations, rely on that certification. Even though they see a hazardous flanker? Your Honor, I represent a lot of companies, and I see things labeled incorrectly all the time, but the bottom line is those drones have to match up with the manifest, which has to match up with what's on the truck. So even though it says it's hazardous waste, if that manifest is certified and says it's non-hazardous, that's what the drones have to reflect. But that seems like a great way to get around that problem, just creating a manifest that doesn't say that it's hazardous. Well, then you wouldn't know how to handle it, and you'd violate a whole lot of transportation regulations. Thank you, Your Honor. In case you want to take it under advisement, we'll take the next case.